**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **NATIONAL URBAN LEAGUE, et al.,**<br>Plaintiffs,<br>v.<br>**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al.,**<br>Defendants. | Civil Action No. 1:26-cv-03401 |

**DECLARATION OF CY RICHARDSON**
**NATIONAL URBAN LEAGUE**

I, Cy Richardson, declare the following under penalty of perjury:

1. My name is Cy Richardson. I have personal knowledge of the facts contained in this declaration. If called upon to testify, I could and would testify competently to the truth of the facts in this declaration.

2. I am the Senior Vice President for Housing and Economic Programs at the National Urban League. I have held this position since 2015. In my role, I provide executive leadership and strategic oversight for the National Urban League's housing, homeownership, financial empowerment, and community development initiatives. My team and I are responsible for the development, implementation, and management of national housing counseling and asset-building programs delivered through the Urban League affiliate network. My duties include oversight of federally funded housing and community development grants, including grants from the U.S. Department of Housing and Urban Development (HUD), ensuring compliance with programmatic, financial, and reporting requirements. I work closely with affiliate organizations to strengthen

service delivery, monitor performance, provide technical assistance, and advance program quality and impact.

3. I also oversee member services related to housing and community development, including capacity building, training, policy guidance, and resource development for local Urban League affiliates. My responsibilities include cultivating relationships with federal agencies, philanthropic organizations, financial institutions, and other partners; directing national program strategy; developing policies and procedures; and ensuring that housing counseling, foreclosure prevention, homeownership education, rental counseling, and wealth-building services are effectively delivered to communities across the country.

I have more than 30 years of experience in housing counseling, affordable housing, community development, and economic empowerment. Throughout my career, I have worked at the intersection of housing policy, housing finance, fair housing, community development, and nonprofit program administration.

4. Prior to joining the National Urban League, I held leadership positions with the Office of the Brooklyn Borough President and the Council of the City of New York, where I was responsible for housing policy development, affordable housing initiatives, community reinvestment strategies, and program management. My professional experience includes overseeing housing counseling programs, managing federal and philanthropic grants, developing partnerships with public and private sector stakeholders, conducting policy analysis, and advancing initiatives designed to expand access to safe, affordable housing and sustainable homeownership opportunities.

In my current role and throughout my career, I have worked extensively with HUD-funded programs and nonprofit service delivery systems, including program design, grant administration,

compliance oversight, performance measurement, and strategic planning. I have also collaborated with lenders, servicers, housing finance agencies, community development organizations, and government officials to promote equitable access to housing and economic opportunity.

In addition, I serve or have served on numerous advisory committees, task forces, and professional working groups focused on housing, community development, financial inclusion, and racial equity. My experience has provided me with substantial knowledge of housing counseling practices, affordable housing policy, federal grant management, and the operational needs of nonprofit organizations that deliver housing-related services.

5. I oversee the National Urban League's participation in HUD's Housing Counseling Program as a HUD-approved intermediary, including preparing and submitting Comprehensive Housing Counseling (CHC) NOFO applications, managing subgrants to affiliates, monitoring affiliate compliance and overseeing HUD-9902 reporting. I have been directly involved in the National Urban League's CHC applications since 2002 including the FY2025 application submitted on May 22, 2026.

6. This experience and my role at the National Urban League give me knowledge of the Comprehensive Housing Counseling Program application and award process, and of the harms that the National Urban League and our affiliates face as a result of HUD's actions.

Funding is at stake. The National Urban League has been receiving approximately $1.6 million Comprehensive Housing Counseling funds, of which approximately 90% would have been sub granted to our affiliates to deliver direct counseling services.

7. Our HUD housing counseling network includes 25 affiliates in 17 states and District of Columbia, which together serve approximately 22,000 households each year.

The impact on our Intermediary includes the loss of funds that we would have sub granted to affiliates, and loss of the administrative share that pays for network management: grant compliance, quality control, 9902 reporting support, performance reviews, and training. Those oversight obligations under 24 CFR Part 214 continue whether or not grant fund arrives, so intermediaries will carry compliance costs with no federal offset. Intermediaries had to certify affiliate rosters and keep network affiliations consistent through the application and performance period. Some affiliates may leave networks or drop HUD approval which weakens the intermediary structure going into FY26.

8. Affiliates are more exposed because they have thinner reserves. The HUD grant is often a modest share of their budget/reputational funding, but it anchors other funding: HUD has reported in the past that counseling agencies leverage about six dollars for every appropriated dollar. Losing the anchor can make other funders hesitant.

9. The biggest practical risk is losing certified counselors. All counseling under HUD programs must be done by HUD-certified counselors, and those staff take time and training to replace. Agencies that lay them off may not be able to rebuild quickly when funding returns. One of our sub grantees had to close their housing counseling program this month due to lack of funding.

10. HUD-approved housing counseling agencies are among the few trusted, impartial sources of housing guidance available to low- and moderate-income families. Their counselors are HUD-certified, their services are free or low-cost, and federal rules require them to act in the client's interest, free from the conflicts of interest that can shape advice from lenders, real estate agents, or for-profit "relief" companies. Losing this capacity weakens the fabric that protects vulnerable communities at their most financially exposed moments.

11. The effects are immediate. Many down payment assistance programs require counseling as a prerequisite, so shrinking counseling capacity can stall the DPA pipeline and shut first-time buyers out of homeownership. Foreclosure prevention for FHA borrowers, which remained an eligible activity under the NOFO, also loses its federal funding source, leaving struggling homeowners with fewer places to turn when they fall behind.

12. When trusted counselors disappear, predatory actors fill the gap. Distressed homeowners are frequent targets of foreclosure rescue and loan modification scams that charge upfront fees, promise results they cannot deliver, or trick families into signing over their homes. Federal agencies routinely direct consumers to HUD-approved counselors precisely to avoid these schemes. Without them, LMI families, older homeowners, and communities of color, who have historically been targeted by predatory lending, are more likely to lose savings, equity, and ultimately their homes, undermining neighborhood stability and generational wealth.

13. HUD did not issue the FY2025 NOFO until March 26, 2026, leaving our network without FY2025 federal counseling funds for six months, and the rescission now eliminates those funds entirely after affiliates had planned and applied in reliance on them.

14. Describe the organization's mission/background and history. Include the number of members, the geographic reach, and basic information about the number of HCAs that rely on funding from HUD. Broadly, this section should discuss the structure of the organization and how it serves its members and the demographic makeup, racial and ethnic composition, or cultural diversity when describing the populations you serve.

15. The National Urban League (NUL) is an historic civil rights organization dedicated to economic empowerment aimed at raising the standard of living in historically underserved urban communities. Founded in 1910 and headquartered in New York City, NUL spearheads the efforts

of its local affiliates through the development of programs, as well as public policy research and advocacy. Today, NUL supports 93 affiliates serving 300 communities in 36 states and the District of Columbia, who provide direct services that impact and improve the lives of more than 2 million people annually. NUL focuses on five major program areas – health, housing, education, jobs and entrepreneurship.

16. NUL has been a HUD-approved housing counseling Intermediary for nearly 30 years and currently coordinates a network of 25 local affiliates that provide housing counseling in 17 states and the District of Columbia. Each affiliate in our network receives an annual grant through HUD's Comprehensive Housing Counseling program, which helps guide and fund the meeting of federal program standards. Client services are tailored to the needs of the communities served and may include budget and credit, pre- and post-purchase, foreclosure prevention, rental, homeless, predatory lending, reverse mortgage, and fair housing; education and counseling.

17. The NUL HUD Housing Counseling Network serves a diverse group of clients from various ethnicities, races, and income levels. Based on NUL's FY24 9902 data, 68% of clients served were Black or African American, 15% were White, 7% answered More than One Race, 7% chose not to respond and the remaining 5% identified as either Asian, American Indian/Alaskan Native, or Native Hawaiian or Other Pacific Islander. Additionally, 11% of clients were Hispanic. The range of income levels varies as well, with 35% of clients making <30% of Area Median Income (AMI), 26% with income levels between 30-49% of AMI, 24% with income levels between 50-79% AMI, and 15% making above 80% of AMI. The National Urban League's diverse client base spans communities across the country and includes individuals and families with varied backgrounds, incomes, ages, and housing needs, reflecting the unique and evolving circumstances of the communities served.

18. The National Urban League's comprehensive housing counseling program provides individuals and families with the knowledge, resources, and individualized support needed to achieve and maintain housing stability and build long-term financial security. Through its network of HUD-approved housing counseling agencies, NUL supports clients across the housing continuum, including financial literacy, rental counseling, pre-purchase education and counseling, post-purchase counseling, foreclosure prevention, reverse mortgage counseling, and homelessness and disaster recovery services.

19. The program takes a holistic, client-centered approach, recognizing that housing stability is closely connected to financial well-being, employment, health, and overall economic mobility. Housing counselors work with clients to assess their individual circumstances, develop actionable goals, navigate complex housing and financial systems, access available resources, and connect to additional community services when needed. This approach helps clients make informed housing decisions, strengthen their financial readiness, prevent housing instability, and preserve homeownership.

20. Through this comprehensive model, NUL and its affiliates help expand access to sustainable homeownership, prevent displacement and foreclosure, support renters and households experiencing housing instability, and promote greater financial resilience. The program also strengthens the capacity of local organizations to respond to changing housing market conditions and the diverse needs of the communities they serve, helping ensure that clients have access to trusted, culturally responsive support throughout their housing journey.

21. In 2025, NUL's Housing & Community Development Division achieved the following results through the Affiliate cohort of 27 HUD Certified Housing Counseling Agencies:

- 21,951 participants enrolled in comprehensive housing counseling services

  - 1,285 participants gained access to non-housing resources (e.g. social service programs, legal services, public benefits such as Social Security or Medicaid, etc.) after receiving Housing Counseling Services

- 1,575 participants engaged in foreclosure counseling services
  - 596 participants prevented or resolved a mortgage default after receiving Housing Counseling Services.
- 1,227 participants engaged in homeless counseling services
  - 86 homeless or potentially homeless participants obtained temporary or permanent housing after receiving Housing Counseling Services.
- 4,346 participants engaged in Pre-Purchase Counseling services
  - 693 participants received pre-purchase/homebuying counseling and purchased housing after receiving Housing Counseling Services.
- 8,223 participants engaged in Pre-Purchase Education services
- 1,140 participants engaged in full Rental Counseling services
  - 250 participants received rental counseling and avoided eviction after receiving Housing Counseling Services.
- 1,923 participants engaged in Financial Literacy Education services
- 1,362 participants engaged in Fair Housing Education services

- 1,339 participants engaged in Predatory Education services

22. The National Urban League has held a HUD CHC award as a National Intermediary since 2004, for over 22 years. However, NUL has been providing Housing Counseling and Fair Housing services since 1997.

23. Since FY2021, the National Urban League has received an average of approximately $1.6 million in each Comprehensive Housing Counseling grant cycle. In any given year, the CHC Program accounts for roughly 30 percent of the National Urban League's overall Housing and Community Development Program annual budget. The department's additional funding for housing counseling comes from private sources, such as banking partners and foundations, which typically support specific programs or regions rather than the network as a whole.

24. The National Urban League's HUD Comprehensive Housing (CHC) counseling grant program application is a competitive process. All Urban League affiliates are invited to apply through the Association of Executives (AOE), once the Notification of Funding Announcement is released by HUD (NOFA). Returning applicants complete NUL's customized version of the NOFA application. New applicants are vetted for eligibility before an application is accepted. This includes analysis of their existing program against the criteria used by HUD for approval as a housing counseling agency. From the date of the NOFA release for FY25, HUD allowed 60 days to apply, within which NUL coordinates with all 25 applicants to collect and analyze materials and create a comprehensive submission.

25. In order to ensure program standards are consistently met and best practices shared across our network, a successful sub-grantee is expected to demonstrate the following: financial

sustainability through a diverse portfolio of funds that do not come solely from NUL; adoption and implementation of the National Industry Standards (NIS); retain a certified Housing Director at each site; have a training plan for each of the counseling staff that includes certification where appropriate; conduct regular data oversight and at monthly client service oversight by the Housing Director via counseling observation, client file reviews, or overseeing peer reviews; evaluate the counseling case load on a regular basis; follow a detailed protocol for safe disposal of old files; involve senior leadership such as the VP of Programs, CFO and CEOs in program performance, reporting and proposals; formally on-board staff with support from NUL to ensure our policies are enforced uniformly across the network; renew a commitment to the affiliate's Code of Conduct on an annual basis; incorporate counseling quality and outcomes as part of a counselor's overall performance evaluation; and analyze outreach and referral data.

26. The National Urban League submitted an application for the FY25 HUD CHC NOFO on May 22nd, 2026.

27. HUD represented that FY2025 Comprehensive Housing Counseling awards would be made in August 2026. The FY2025 CHC and HCT NOFO (FR-6900-N-33), published on Grants.gov on March 26, 2026, stated that the anticipated award date was August 1, 2026.

28. In reliance on HUD's representation that FY2025 awards would be made in August 2026, our affiliates made concrete operational and financial commitments. They kept HUD-certified housing counselors on staff through this period, covering salaries with the expectation that HUD award would be announced in August and will be reimbursed for eligible activities conducted since October 1, 2025. They provided the network data, counselor certification information, and client-service figures required for the National Urban League's NOFO application and sub-allocation plan. Affiliates also scheduled workshops and counseling appointments and

made commitments to partner lenders, down payment assistance programs, and local governments based on an August start. With the FY2025 funds now rescinded, these affiliates have absorbed costs they cannot recover and face cutting staff and services they maintained in reliance on HUD's timeline.

29. The National Urban League had a virtual meeting with David Berenbaum, Deputy Assistant Secretary, Office of Housing Counseling on September 3, 2026.

30. The rescission of FY2025 housing counseling funds will cause significant and, in some cases, permanent losses of funding and services across the National Urban League's affiliate network. The National Urban League expected to receive approximately $1.6 million in FY2025 Comprehensive Housing Counseling funds, of which approximately 90% would have been subgranted to 25 affiliates. HUD anticipated making these awards on August 1, 2026. Instead, the Administration has moved to rescind $56 million of the $58 million Congress appropriated for housing counseling in FY2025, eliminating these awards entirely.

31. Harm is already occurring. The Urban League of Rochester, in Rochester, New York, a HUD-approved housing counseling agency since 2007, closed its housing counseling program in September 2026 after 19 years of service because, without FY2025 funding, it could no longer retain its only HUD-certified housing counselor. Families in the Rochester area who relied on the program for housing counseling and education services have lost access to those services.

32. We anticipate layoffs and staff reductions across our network. At least 30% of our network will expect to lose HUD-certified counseling staff. In 50% of them, a single HUD-certified counselor runs the entire housing counseling program, so losing that one position would effectively end housing counseling in those communities. Because HUD-certified counselors

require extensive training and certification, these programs cannot easily be rebuilt once lost, even if funding is later restored.

The loss extends beyond staff. These affiliates serve low- and moderate-income families, older homeowners, and communities of color who depend on trusted, impartial guidance. Without HUD-approved counseling, homeowners facing delinquency lose help negotiating with servicers, first-time buyers lose the counseling many down payment assistance programs require, and vulnerable residents become more exposed to foreclosure rescue and loan modification scams.

33. The elimination of HUD Housing Counseling Program funding would have immediate and far-reaching consequences for the individuals, families, and communities served by the National Urban League and its affiliate network. Housing counseling is often the only trusted, free, and culturally competent source of guidance available to low- and moderate-income households navigating homeownership, rental housing, foreclosure prevention, financial recovery, and long-term wealth-building.

34. Without this funding, critical services would be significantly reduced or eliminated, including pre-purchase homebuyer education, one-on-one housing counseling, foreclosure prevention assistance, rental counseling, fair housing guidance, financial capability coaching, and post-purchase support. Thousands of households each year would lose access to trained counselors who help them understand mortgage options, improve credit, avoid predatory lending practices, resolve housing crises, and make informed financial decisions.

35. The impact on urban communities would be substantial:

36. Reduced homeownership opportunities. Prospective homebuyers, particularly first-generation homebuyers and households of color, would lose access to the education and counseling

necessary to qualify for safe and sustainable mortgages. This would likely result in fewer successful homeownership outcomes and wider racial homeownership gaps.

37. Increased housing instability. Families experiencing financial hardship would have fewer resources to avoid foreclosure or eviction. The loss of early intervention services would increase the likelihood of housing displacement, homelessness, and neighborhood instability.

38. Greater vulnerability to predatory practices. Housing counselors serve as trusted advisors who help consumers identify fraudulent schemes, predatory lending products, and housing scams. Without these services, vulnerable households would face increased financial risk and exploitation.

39. Lower household wealth and economic mobility. Homeownership remains one of the primary pathways to wealth creation for American families. The elimination of counseling services would reduce opportunities for families to build equity, pass assets to future generations, and achieve long-term financial security.

40. Disproportionate harm to underserved communities. The communities most affected will be low-income households, African Americans, Latinos, seniors, veterans, persons with disabilities, and other historically underserved populations. These groups already face barriers to accessing affordable housing and mortgage credit and would lose an important source of support and advocacy.

41. Weaker community outcomes. Stable housing contributes to stronger neighborhoods, improved educational outcomes, better health, and increased economic activity. The loss of counseling services would undermine these community benefits and place additional strain on local governments, nonprofit organizations, and social service systems.

42. For the National Urban League and its affiliates, the elimination of housing counseling funding would reduce our organizational capacity, force staff reductions, and diminish our ability to serve families at a time when housing affordability challenges, rising costs, and barriers to homeownership remain significant concerns. Ultimately, the loss of this program would not merely eliminate a funding stream; it would remove a proven infrastructure that helps families achieve housing stability, build wealth, and strengthen communities across the nation.

43. Based on NUL's FY24 production, the following estimated households will lose access to counseling services:

- 22,000 total participants will lose access to Comprehensive Housing Counseling services including:
  - 1,600 participants will lose foreclosure counseling services
  - 1,200 participants will lose homeless counseling services
  - 4,300 participants will lose Pre-Purchase Counseling services
  - 8,200 participants will lose Pre-Purchase Education services
  - 1,100 participants will lose Rental Counseling services
  - 1,900 participants will lose Financial Literacy Education services
  - 1,400 participants will lose Fair Housing Education services
  - 1,300 participants will lose Predatory Education services

44. Several affiliates in our network have told us they will have to reduce or end housing counseling operations if FY2025 funds are not restored. For example, Urban League of Rochester located in Rochester, New York who has been a HUD certified Housing Counseling Agency since 2007 i.e. for 19 years had to close its housing counseling operations this month

September 2026 due to lack of funding and unable to keep their only HUD Certified housing counselor on staff.

45. Without these funds, we anticipate that at least seven to eight of our affiliates will lose HUD-certified counseling staff. In at least half of those affiliates (Urban League of Greater Madison, Knoxville Area Urban League, Birmingham Urban League and Essex County Urban League) a single HUD-certified counselor runs the entire housing counseling program, so losing that one position would effectively end their housing counseling operations. As a result, these affiliates would serve approximately fewer households annually and may discontinue their HUD-approved counseling programs.

46. The loss of Comprehensive Housing Counseling funding reaches well beyond the counseling session. One of our sub-grantees closed its housing counseling program this month after losing its funding and its HUD-certified counselor. Clients who were in the middle of home purchases, mortgage delinquencies, and rental crises are now waiting for services. Our network primarily serves low-income households and communities of color. Based on FY24 HUD-9902 data, 68% of clients were Black or African American, 11% were Hispanic, and 61% earned below 50% of Area Median Income. Much of our work goes beyond pre-purchase counseling to post-purchase, foreclosure prevention, rental, and homeless counseling, where families are most financially exposed. For these households, a HUD-approved agency is often the only free, impartial source of housing guidance, and the alternatives are often fee-based or tied to a party with a financial stake in the outcome.

47. The effects extend across the housing ecosystem our affiliates anchor. Real estate agents, lenders, syndicators, and appraisers lose a reliable source of mortgage-ready buyers and a partner for resolving homeowner distress before default. Nonprofits that do not offer counseling,

and our education partners, depend on our affiliates' expertise and client engagement, so their capacity shrinks as well. Because our affiliates are full-service agencies, housing counseling is also an entry point to their financial coaching, workforce development, entrepreneurship, education, and digital literacy programs. Vendors will see contracts reduced or ended, including counseling software, training and certification providers, credit reporting services, and interpreters.

48. Restoring funding later cannot undo these harms, because the lost capacity takes years to rebuild. HUD requires all counseling under its programs to be delivered by HUD-certified counselors at HUD-approved agencies. In our experience, hiring a qualified counselor takes 12 to 18 months, and certification can take another six. An affiliate that loses its counselors may therefore be unable to deliver HUD-eligible services for up to two years after funding returns. This is already happening. The sub-grantee described in Paragraph 15 closed because HUD funding covers only part of its program's cost, and without that funding and its certified counselor it cannot operate. Reopening would require rebuilding the program from the ground up.

49. Many of the harms to families are also permanent. Foreclosure, eviction, and home purchase run on fixed timelines that do not wait for funding decisions. Counseling cannot prevent every bad outcome, but it helps families understand their options, and without it the worst outcome becomes the most likely one. A family that loses its home, is evicted, or closes without down payment assistance cannot be made whole by funding that arrives later. The trust our network has built over two decades will not automatically return either, as families turn to fee-based or predatory actors and partners look elsewhere.

50. Impact on the National Urban League Affiliate Network:

51. The loss of HUD Comprehensive Housing Counseling Program funding would extend far beyond the elimination of direct services. It would have significant and potentially

lasting consequences for our affiliate network, weakening local organizational capacity, straining relationships with community partners, reducing service delivery infrastructure, and limiting our network's ability to advance housing stability and wealth-building outcomes in communities across the country.

52. For many affiliates, HUD Housing Counseling funding represents one of the few dedicated federal investments supporting housing and financial empowerment activities. The loss of this funding would place substantial operational and financial pressure on affiliates, many of which already operate with limited unrestricted resources.

53. As the intermediary and national support organization, the National Urban League provides training, compliance oversight, technical assistance, capacity building, and programmatic leadership for housing counseling activities. If funding is eliminated, affiliates will certainly face difficult decisions regarding staffing, program reductions, and organizational priorities. This will create challenges for maintaining consistent service levels across the network and reduce opportunities for coordinated national initiatives that align affiliates around shared housing and economic mobility goals.

54. Additionally, affiliates may increasingly seek emergency support, alternative funding sources, and technical assistance from the National Urban League, placing additional demands on national office resources at the very moment funding support is being reduced.

Many affiliates rely on HUD Housing Counseling funding as a foundational resource that leverages additional public and private investment. The loss of funding would likely result in:

- Reductions in housing counseling staff and program capacity.
- Elimination or scaling back of homebuyer education and counseling services.

- Reduced ability to provide foreclosure prevention, rental counseling, and financial coaching.
- Loss of organizational expertise built over decades of housing counseling operations.
- Increased competition for philanthropic and local funding sources.
- Reduced ability to meet community demand during periods of housing market instability and affordability challenges.

55. For smaller and mid-sized affiliates, the funding loss will threaten the viability of entire housing and asset-building departments, eliminating a critical service area that connects residents to broader Urban League workforce, financial empowerment, and economic development programs.

56. HUD-approved housing counseling agencies serve as key partners within local housing ecosystems. Urban League affiliates regularly collaborate with:

- Mortgage lenders and Community Reinvestment Act (CRA) partners.
- State and local housing finance agencies.
- Housing authorities.
- Realtors and housing industry stakeholders.
- Nonprofit housing providers.
- Local governments.
- Emergency rental assistance and homelessness prevention programs.

57. The elimination of housing counseling funding would weaken these partnerships by reducing the network's ability to deliver services that many community stakeholders rely upon. In many markets, Urban League affiliates serve as the trusted intermediary connecting residents to housing opportunities, financial resources, and public programs. The loss of this capacity would

leave significant service gaps that few organizations are positioned to fill. Furthermore, partners that currently refer clients to Urban League affiliates would have fewer trusted destinations for consumers needing housing guidance, increasing pressure on already overstretched social service systems.

58. The communities most affected would be those already facing the greatest barriers to economic mobility and housing stability. The elimination of funding would disproportionately affect:

- First-generation homebuyers.
- African American households.
- Latino households.
- Low- and moderate-income families.
- Seniors on fixed incomes.
- Veterans.
- Households recovering from financial hardship.
- Individuals facing foreclosure or eviction risks.

59. Without counseling services, fewer families would successfully transition into sustainable homeownership, more households would face housing instability without access to intervention services, and fewer consumers would receive trusted guidance when making significant financial and housing decisions.

60. The consequences would extend beyond individual households. Communities could experience:

- Lower homeownership rates.
- Reduced wealth-building opportunities.

- Increased foreclosure and eviction risks.
- Greater housing insecurity.
- Reduced neighborhood stability.
- Widening racial wealth and homeownership gaps.
- Increased demand for emergency assistance and public support systems.

61. Perhaps most concerning is the long-term erosion of a national infrastructure that has taken decades to build. The National Urban League affiliate network represents one of the largest trusted providers of culturally responsive housing counseling and financial empowerment services in the country. The loss of HUD funding would weaken a proven system that helps families navigate housing challenges, achieve homeownership, preserve assets, and build generational wealth.

62. Over time, rebuilding lost staffing, expertise, community partnerships, and consumer trust would be far more difficult and costly than maintaining the existing counseling infrastructure. The result would be a diminished capacity to meet future housing challenges and a reduced ability to advance the National Urban League's mission of economic empowerment, equity, and opportunity in America's most underserved communities.

In sum, the loss of housing counseling funding would not simply reduce services; it would weaken a nationwide network of trusted community institutions, disrupt long-standing partnerships, and diminish opportunities for housing stability and wealth creation for the families and communities the National Urban League affiliate network was established to serve.

63. If given the opportunity, The National Urban League would compete for the FY 2025 HUD CHC award.

64. The National Urban League will be irreparably harmed by its inability to compete for awards in the future that would have been funded from the appropriations in the FY2025 Housing Counseling Assistance, provided by the Full-Year Continuing Appropriations and Extensions Act, 2025 (Public Law 119-4, approved March 15, 2025).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 29th day of September, 2026, at New York, NY.

Signed by:
Cy Richardson
A2A77D834BEC419...

Cy Richardson
SVP, Economic and Housing Programs
National Urban League