**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL URBAN LEAGUE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Case No. 26-cv-3401 (JMC) |

# ORDER

On September 29, 2026, Plaintiffs—various organizations that are eligible to receive funding from the Department of Housing and Urban Development (HUD)—sued President Donald Trump, HUD, the Secretary of HUD, the Assistant Secretary for the Office of Fair Housing and Equal Opportunity, the Office of Management and Budget (OMB), the Director of the OMB, and the United States. ECF 1. Plaintiffs allege that on September 25, 2026, just five days before the end of the fiscal year, "President Trump signed and the [OMB] transmitted to Congress a package of proposed rescissions of almost $1 billion in congressional appropriations." *Id.* ¶ 2. Included in that package was a proposed rescission for $56.1 million of appropriated funds that Congress had directed to be spent on HUD's Comprehensive Housing Counseling (CHC) program. *Id.* ¶ 3. The CHC program was created by Congress "to provide information, advice, and tools for consumers seeking, financing, maintaining, renting, or owning a home, and to assist homeowners facing foreclosure or homelessness." *Id.* CHC funds are awarded to Plaintiff organizations and/or to other similar organizations that perform this congressional mandate. *See id.* ¶ 3. The rescission that President Trump proposed is nearly the entire $57.5 million appropriated by Congress for the CHC

program. *See id.* ¶¶ 3, 8. Plaintiffs allege that on the day of the transmission of the rescission request, the White House published a press release about the proposed rescissions, claiming that the CHC program provides funding to "grantees with DEI-centric discriminatory agendas," who are "radical groups." *Id.* ¶ 119.

Plaintiffs claim that the proposed rescission is unlawful on several grounds, including that it violates Plaintiffs' rights under the First Amendment. *See id.* ¶¶ 113–34. And as relevant here, on September 30, they moved for a temporary restraining order and preliminary injunction which would "prohibit[] Defendants from withholding funds appropriated by Congress for [HUD's CHC] program and requir[e] Defendants to make those funds available for obligation." ECF 5 at 1.[1] Plaintiffs' motion is urgent, they say, because "the funds' statutory period of availability expires on September 30, 2026." *Id.* In other words, once September 30 passes, HUD's "budgetary authority [will] lapse[]" and "the unobligated funds [will] revert back into the general Treasury." *City of Houston v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1426 (D.C. Cir. 1994) (quoting *W. Va. Ass'n of Cmty. Health Ctrs. v. Heckler*, 734 F.2d 1570, 1576 (D.C. Cir. 1984)). The funds Plaintiffs seek to have obligated and distributed would at that point be unobtainable. *See id.* Defendants do not dispute this general principle. *See* Draft Hr'g Tr. at 8.

The Court is not presently in a position to grant or deny the preliminary relief that Plaintiffs request. Plaintiffs' motion for relief (with exhibits included) is approximately 150 pages, and it raises complex issues of law. *See* ECF 5. And while Defendants managed to file a response on September 30, their counsel represented to the Court that this response left out arguments that Defendants would have made if provided additional time. *See* Draft Hr'g Tr. at 4–5. The Court is hesitant to determine whether the government is required to obligate nearly $60 million without

---

[1] All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

the government itself being fully heard on the issue. However, the Court is likewise hesitant to allow September 30 to pass such that Plaintiffs would lose out on significant amounts of funding due to allegedly unconstitutional actions.

Based on the Parties' representations and having considered the arguments made on the record, the Court will exercise its equitable and statutory authority to suspend operation of the otherwise-applicable September 30, 2026, lapse of budget authority pending resolution of Plaintiffs' request for preliminary relief. While the unspent CHC funds would normally lapse after today, it has long been established that "[t]he equity powers of the courts allow them to take action to preserve the status quo of a dispute and protect their ability to decide a case properly before them." *City of Houston*, 24 F.3d at 1426 (quoting *Nat'l Ass'n of Reg'l Councils v. Costle*, 564 F.2d 583, 588 (D.C. Cir. 1977)). In situations such as this one—where a lapse in appropriations is imminent, and that lapse would otherwise thwart a plaintiff's ability to obtain relief—"the courts simply suspend the operation of a lapse provision and extend the term of already existing budget authority." *Id.* (quoting *Nat'l Ass'n of Reg'l Councils*, 564 F.3d at 588). The Court has authority to effect such a suspension not only through its equitable powers, but also through statute, because Congress has "expressly authorized courts to suspend the lapse of budget authority while lawsuits play out." *Goodluck v. Biden*, 104 F.4th 920, 928 (D.C. Cir. 2024); *see also* 31 U.S.C. § 1502(b) ("A provision of law requiring that the balance of an appropriation or fund be returned to the general fund of the Treasury at the end of a definite period does not affect the status of lawsuits or rights of action involving the right to an amount payable from the balance.").

The only preconditions for a court to suspend operation of the lapse are that the lawsuit be filed on or before the statutory lapse date and that the plaintiffs seek a preliminary injunction to preserve the funds. *See Connecticut v. Schweiker*, 684 F.2d 979, 997 (D.C. Cir. 1982); *W. Va.*

*Ass'n of Cmty. Health Ctrs.*, 734 F.2d at 1576–77; *City of Houston*, 24 F.3d at 1426–27. Both of those criteria are satisfied here. *See* ECF 1; ECF 5. The Court will therefore order that the statutory lapse of budget authority be suspended until the Plaintiffs' motion for preliminary relief is resolved.

Defendants, in their response to Plaintiffs' motion, oppose such a suspension, arguing that the Court lacks the inherent equitable power to "override clear statutory [deadlines]" that Congress has established. ECF 14 at 12–14. The Government's source for that argument is *Goodluck v. Biden*, 104 F.4th 920 (D.C. Cir. 2024). While the court in *Goodluck* did offer commentary on the scope of a court's equitable power to suspend a statutory deadline, it did not overrule the long line of D.C. Circuit cases that found that such an equitable power does, in fact, exist in the appropriations context. *See* 104 F.4th at 927–28; *see also, e.g.*, *City of Houston*, 24 F.3d at 1426; *W. Va. Ass'n of Cmty. Health Ctrs.*, 734 F.2d at 1576–77; *Connecticut*, 684 F.2d at 997; *Nat'l Ass'n of Reg'l Councils*, 564 F.2d at 588. That authority is still binding on this Court. Indeed, the federal government has recently—while litigating in this District—taken the opposite position from the one it advances here. *See, e.g.*, Order at 2, *Glob. Health Council v. Trump*, No. 25-cv-402 (D.D.C. Sep. 30, 2026), ECF 223 (government represented that "there would be no prejudice to any party" if lapse deadline was suspended "because binding authority allows the court to hold open the period of availability for the appropriated funds beyond September 30, 2026"); *Nat'l Fair Hous. All. v. U.S. Dep't of Hous. & Urb. Dev.*, No. 25-cv-1965, 2025 WL 2105567, at *12 n.4 (D.D.C. July 28, 2025) (quoting government's concession at oral argument that *Goodluck* does not overrule cases that found inherent equitable authority to suspend lapse deadline). And in any case, even if the Court lacked equitable authority to suspend the deadline, there can be no dispute that the Court has independent *statutory* authority to order such a suspension. *See Goodluck*, 104 F.4th

at 928; 31 U.S.C. § 1502(b); *see also* ECF 14 at 12 (Defendants arguing that a court needs "statutory authority" to suspend appropriations deadline, but not citing to 31 U.S.C. § 1502(b)).

In order to preserve the status quo and maintain the Court's jurisdiction pending resolution of Plaintiffs' request for preliminary relief, the Court finds that an order suspending the deadline for appropriations lapses is warranted. It is therefore

**ORDERED** that the September 30, 2026, deadline for an agency to obligate or award appropriated funds is **SUSPENDED** as to the $57.5 million of CHC funds, until the Court rules on Plaintiffs' motion for preliminary relief, ECF 5; and it is

**ORDERED** that the briefing schedule proposed by the Parties on the record is adopted. Defendants are permitted to file a more fulsome response to Plaintiffs' motion, ECF 5, by **October 9, 2026**. Plaintiffs are permitted to reply to any response from Defendants by **October 19, 2026**.

The Court will schedule a motion hearing as necessary to take place after the conclusion of briefing.

**SO ORDERED.**

Jia M. Cobb
United States District Judge

Date: September 30, 2026